# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

IN RE: PEARLAND SUNRISE LAKE     §   CASE NO. 10-11926
 VILLAGE I, LP                         §
                                        §
 DEBTOR                           §
                                        §   CHAPTER 11


## DISCLOSURE STATEMENT OF
## PEARLAND SUNRISE LAKE VILLAGE I, LP
## PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE

DATED:       November 30, 2010       Frank B. Lyon
                Austin, Texas            6836 Austin Center Boulevard
                                             Suite 150
                                             Austin, Texas 78731

                                             ATTORNEY FOR
                                             PEARLAND SUNRISE LAKE VILLAGE I, LP
                                             DEBTOR-IN-POSSESSION


NOTICE:      THIS DISCLOSURE STATEMENT IS NOT A SOLICITATION OF YOUR VOTE FOR THE DEBTOR'S PLAN OF REORGANIZATION. PRIOR TO ANY SUCH SOLICITATION, THE BANKRUPTCY COURT MUST APPROVE THIS DISCLOSURE STATEMENT AS HAVING ADEQUATE INFORMATION TO ENABLE THE CREDITORS TO MAKE AN INFORMED JUDGMENT ON THE PLAN. THIS DISCLOSURE STATEMENT IN BEING SERVED UPON PARTIES-IN-INTEREST WHO HAVE REQUESTED NOTICE AND IS FOR INFORMATION PURPOSES ONLY. THE BANKRUPTCY CLERK'S OFFICE WILL SEND NOTICE OF THE HEARING ON THE APPROVAL OF THIS DISCLOSURE STATEMENT TO ALL CREDITORS ON THE COURT'S MAILING MATRIX.

# TABLE OF CONTENTS
### of the
## CHAPTER 11 DISCLOSURE STATEMENT
### of
## *PEARLAND SUNRISE LAKE VILLAGE I, LP*

```
I.   INTRODUCTION................................................4

A. REPRESENTATIONS..............................................4
B. EXPLANATION OF CHAPTER 11....................................5

II. INFORMATION CONCERNING THE DEBTOR...........................5

A. FINANCIAL HISTORY AND BACKGROUND OF THE DEBTOR...............5
B. RESULT OF OPERATIONS OF DEBTOR-IN-POSSESSION.................7
C. FUTURE MANAGEMENT AND OPERATIONS OF THE DEBTOR...............7
D. ESTIMATED FUTURE INCOME AND EXPENSES.........................7
E. ACCOUNTING METHOD; SOURCE OF FINANCIAL INFORMATION..........7

III. ANALYSIS AND VALUATION OF PROPERTY.........................7

A. REAL PROPERTY................................................7
B. PERSONAL PROPERTY............................................7
C. ACCOUNTS RECEIVABLE..........................................7
D. FORCED LIQUIDATION ANALYSIS..................................8

IV. SUMMARY OF THE DEBTOR'S PLAN...............................9

A. IN GENERAL...................................................9
B. CLASSIFICATION OF CLASSES UNDER THE PLAN.....................9
C. SUMMARY OF TREATMENT OF EACH CLASS..........................10
     CLASS 1..................................................10
     CLASS 2..................................................11
     CLASS 3..................................................11
     CLASS 4..................................................11
     CLASS 5..................................................11
     CLASS 6 .................................................11
     CLASS 7 .................................................12
     CLASS 8..................................................12

V. PLAN OF REORGANIZATION......................................13

A. SUMMARY OF PLAN OF REORGANIZATION...........................13
B. FUTURE MANAGEMENT OF THE DEBTOR.............................13
C. FEASIBILITY OF THE PLAN.....................................13
D. ALTERNATIVES TO THE DEBTOR'S PLAN...........................13
E. RISK TO CREDITORS UNDER THE DEBTOR'S PLAN...................14

VI. GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE.............14

A. PROCEDURES FOR RESOLVING CONTESTED CLAIMS...................14
B. DISPUTED, CONTINGENT OR UNLIQUIDATED CLAIMS.................15
C. PENDING LITIGATION, ACTIONS PERTAINING TO FRAUDULENT TRANSFERS,
     VOIDABLE PREFERENCES AND EQUITABLE SUBORDINATION...........15
```

VII. CONFIRMATION OF THE DEBTOR'S PLAN...........................15

A. CONFIRMATION HEARING...........................................15
B. REQUIREMENTS FOR CONFIRMATION OF DEBTOR'S PLAN................16
C. CRAMDOWN......................................................17

VIII. VOTING PROCEDURES AND REQUIREMENTS.........................18

A. BALLOTS AND VOTING DEADLINE...................................18
B. CREDITORS ENTITLED TO VOTE....................................19
C. DEFINITION OF IMPAIRMENT......................................19
D. CLASSES IMPAIRED UNDER THE DEBTOR'S PLAN......................20
E. VOTE REQUIRED FOR CLASS ACCEPTANCE............................20

IX. IMPLEMENTATION OF THE PLAN...................................20

A. EFFECTIVE DATE OF THE PLAN....................................20
B. PAYMENT OF CLAIMS.............................................21
C. PRO RATA PAYMENTS.............................................21
D. MODIFICATION OF THE DEBTOR'S PLAN.............................21
E. RETENTION OF JURISDICTION.....................................21

X. SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE BANKRUPTCY

    CASE........................................................21

XI. FEDERAL INCOME TAX CONSEQUENCES..............................22

XII. CONCLUSION.................................................22

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: PEARLAND SUNRISE LAKE | § | CASE NO. 10-11926 |
| VILLAGE I, LP | § | |
| | § | |
| DEBTOR | § | |
| | § | CHAPTER 11 |

**DISCLOSURE STATEMENT OF**
**PEARLAND SUNRISE LAKE VILLAGE I, LP**
**DATED NOVEMBER 30, 2010**

I.      INTRODUCTION.

Pearland Sunrise Lake Village I, LP (hereinafter referred to as the "Debtor"), filed a Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("the Bankruptcy Court") on July 9, 2010, (the "Petition Date"). Since that time, it has continued to operate as Debtor-in-Possession pursuant to the provisions of Section 1108 of the Bankruptcy Code.

The purpose of this Disclosure Statement is to provide the creditors and parties-in-interest adequate information to make an informed judgment about the Plan (the "Plan") proposed by the Debtor on November 30, 2010 (a copy is incorporated herein for all purposes). Generally, this information includes, among other matters, a brief history of the Debtor, the Chapter 11 Case, a description of the remaining assets and liabilities of the Debtor, an explanation of how the Plan will function and an explanation of why the reorganization of the Debtor under the proposed Plan should result in a greater benefit to the creditors than if the Chapter 11 Case were converted to a Chapter 7 Case and a Chapter 7 Trustee were appointed. To make an informed judgment about the Plan, you are urged to read the entire Disclosure Statement and the Plan.

Capitalized terms used but not defined in this Disclosure Statement are defined in the Plan.

A.      Representations.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

NO REPRESENTATIONS OR OTHER STATEMENTS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR THE VALUE OF ITS ASSETS) ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE EXPRESSLY SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS

MADE TO SECURE YOUR ACCEPTANCE, WHICH ARE OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISIONS. ANY SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, FRANK B. LYON, 6836 AUSTIN CENTER BOULEVARD, SUITE 150, AUSTIN, TEXAS 78731 WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT WHICH MAY TAKE SUCH ACTION AS IT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN INDEPENDENTLY AUDITED EXCEPT AS SPECIFICALLY REFERENCED HEREIN. THE DEBTOR HAS MADE EVERY REASONABLE EFFORT TO INSURE THAT THE INFORMATION CONTAINED HEREIN IS ACCURATE. THIS DISCLOSURE STATEMENT CONTAINS ONLY A BRIEF SUMMARY OF THE PLAN AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS AND PROVISIONS OF THE PLAN. EACH CREDITOR, INTEREST HOLDER AND PARTY-IN-INTEREST IS URGED TO REVIEW THE PLAN IN FULL PRIOR TO VOTING ON THE PLAN TO INSURE COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS, INTEREST HOLDERS, AND PARTIES-IN-INTEREST TO MAKE AN INFORMED DECISION ABOUT THE PLAN.

B.    Explanation of Chapter 11.

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, an attempt is made to restructure a business debtor's finances so that the debtor may both continue to operate the enterprise and repay its creditors. Formulation of a plan of reorganization is the primary purpose of a reorganization proceeding under Chapter 11.

The Chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and equity interest holders with respect to their Claims against, and interests in, the debtor. According to Section 1125 of the Bankruptcy Code, acceptances of a Chapter 11 plan may be solicited by the debtor only after a written disclosure statement approved by the Bankruptcy Court as containing adequate information has been provided to each creditor or equity interest holder. This Disclosure Statement is presented to creditors and interest holders to satisfy the disclosure requirements contained in Section 1125 of the Bankruptcy Code.

II.    INFORMATION CONCERNING THE DEBTOR.

A.    Financial History and Background of the Debtor.

The Debtor was chartered in June 2005 for the purpose of acquiring and developing the Property. Office space of 36,008 square feet of retail space and 42,973 square feet of office space was built on the Property. The Property was able to meet its operating expenses and service its debt until it was struck by Hurricane Ike on September 13, 2008 and severely damaged. The Debtor had been paying for hurricane and wind damage insurance coverage and believed that such

coverage was in place, but none had in fact been purchased. The principals of the Debtor used their own funds to repair the Property, but they lacked the resources to do so completely and quickly. As a result, many of the tenants moved out and the Debtor became unable to meet its obligations.

B.      Result of Operations of Debtor-in-Possession.

This plan was filed four and one-half months after the filing of the Chapter 11 Petition. Debtor's operations are reflected in Exhibit 1, its October 2010 Monthly Operating report which shows income and expenses month by month while in Chapter 11.

C.      Future Management and Operations of the Debtor.

The following members of the Debtor's management will remain after Confirmation:

| Name | Position | Compensation |
|------|----------|--------------|
| Wayne Ausmus | Operations Manager | None |

After Confirmation, the Debtor will continue to operate its business, focusing its attention on leasing the Property.

D.      Estimated Future Income and Expenses.

The Debtor expects to receive the bulk of its future income from the operation of the Property. Additionally, it expects to receive $901,382.98 currently held in the registry of the 23rd District Court of Brazoria County, Texas in the Nationwide Lawsuit. The Nationwide Lawsuit was removed to the United States Bankruptcy Court for the Southern District of Texas where it became an adversary proceeding. Such adversary proceeding was then transferred to the Bankruptcy Court. The Debtor expects that such $901,382.98 will soon be transferred to the registry of the Bankruptcy Court. Once that happens, the Debtor will seek that such $901,832.98 be released to it, to be held in the Debtor-in-Possession account and used to supplement the funding of the Plan. In addition, the Debtor believes that it has a claim against the attorneys who represented it in the Nationwide Lawsuit for return of funds drawn from the settlement proceeds in the Nationwide Lawsuit.

The Debtor's expenses during the Plan period will be the operating expenses for the Property.

E.      Accounting Method; Source of Financial Information.

The Debtor has kept its own books, with the assistance of Dave Patterson, CPA, a certified public accountant in Austin, Texas.

III.    ANALYSIS AND VALUATION OF PROPERTY.

A.      Real Property.

The Debtor owns only the Property, which had a value of $8,471,129 as of January 1, 2010, according to the Brazoria County Appraisal District.

B. <u>Personal Property</u>.

The Debtor owns the personal property shown on its Schedule B, which is attached hereto as Exhibit 2.

C. <u>Accounts Receivable</u>

The Debtor had accounts receivable as of the Petition Date as shown on Exhibit 2.

D. <u>Forced Liquidation Analysis</u>.

In the event that it is necessary to liquidate the Debtor's assets at a liquidation sale rather than to have the Debtor continue its business operations as called for by the Plan, the Debtor estimates that the Property would be sold for $8,00,000, which estimate is based upon the valuation by the Brazoria County Tax Assessor-Collector.

<u>SALES PROCEEDS AND CASH ON HAND</u>

<u>Real Property</u>

| | |
|---|---|
| Land and building | $8,000,000 |
| Cash on hand (est.) | $5,000 |
| | |
| TOTAL LIQUIDATION PROCEEDS | $8,005,000 |
| LESS: | |
| | |
| Real estate commission (6.0%) | $480,000 |
| Closing costs (3.0%) | $240,000 |
| Legal | $10,000 |
| Miscellaneous | $1,000 |
| SUBTOTAL EXPENSES | $731,000 |
| | |
| NET PROCEEDS AVAILABLE FOR DISTRIBUTION | $7,274,000 |

ESTIMATED DISTRIBUTIONS:

Secured and Priority Creditors:

| | |
|---|---|
|  Brazoria County Tax Collector | $50,315 |
|  "A" Note (remaining balance of funds available) | $7,223,685 |
| | |
| SUBTOTAL TO SECURED CREDITORS | $7,274,000 |

SHORTFALL ON "A" NOTE

| | |
|---|---|
| Estimated balance | $12,850,000 |
| Amount available from above | $ 7,223,685 |
| Shortfall | ($5,626,315) |

RECAP

| | |
|---|---|
| Sales Proceeds and Cash on Hand | $8,005,000 |
| LESS: | |
| Expenses | ($731,000) |
| Secured Claims | |
| "A" Note | ($7,223,685) |
| Brazoria County Appraisal District | ($50,315) |

TOTAL AVAILABLE TO UNSECURED CREDITORS        $0

Thus, the distribution to unsecured creditors in a Chapter 7 liquidation would be zero as priority and secured Claims and administrative expenses exceed the estimated liquidation proceeds.

IV.     SUMMARY OF THE DEBTOR'S PLAN.

This Disclosure Statement describes generally the provisions of the Plan. The following overview is qualified in its entirety by the more detailed information contained in the remaining articles of this Disclosure Statement and the Plan itself.

A.     In General. The Plan is a plan of reorganization. Debtor owns the Property, which consists of approximately 5.8 acres of land at 9415 Broadway, Pearland, Texas together with 36,008 square feet of retail space and 42,973 square feet of office space. The Plan proposes to repay the Debtor's creditors in full through the continued operation of the Property, use of the Registry Funds and the possible recovery of other funds related to the Nationwide Lawsuit.

B.     Classification of Classes under the Plan.

Claims and interests are classified as follows:

Class 1.         Allowed Administrative Claims under Section 503(b)(2), (3), (4), (5), or (6) of the Code.

Class 2.         Allowed Priority Claims pursuant to Section 507(a)(4), (5) or (6) of the Code.

Class 3.         Allowed Secured Claim of the Holder of the "A" Note.

Class 4.         Allowed Secured Claim of the Holder of the "B" Note.

Class 5.         Allowed Secured Claim of Taxing Authorities.

Class 6.         Allowed Secured Claims of Cemex Construction Materials, LP.

Class 7.        Allowed Secured Claim of JB Contractors and Development, LLC

Class 8.        Allowed Priority Claim of the IRS.

Class 9.        Allowed Unsecured Claims.

Class 10.       Administrative Convenience Class

Class 11.       Holders of Equity Interests.

C.      <u>Summary of Treatment of Each Class</u>.

<u>CLASS 1. Allowed Administrative Claims</u>

The Allowed Amount of Administrative Claims allowed under sections 503(b)(2) through (b)(6) of the Code shall be paid in cash in full on the Effective Date.  The members of Class 1 are the Debtor's attorney, Frank B. Lyon and its accountant, Dave Patterson, CPA.

**Class 1 Claims are not impaired** as they will be paid in full on the Effective Date.

<u>CLASS 2. Allowed Priority Claims</u>

The Allowed Amount of Class 2 Claims shall be paid in full on the Effective Date.  There are no known members of Class 2.

**The Class 2 is not impaired.**

<u>CLASS 3. Allowed Secured Claim of the Holder of the "A" Note</u>

The Allowed Secured Claim of the Holder of the "A" Note shall be paid as follows:  (1) The principal amount of the "A" Note shall be the outstanding principal balance as of the Petition Date; (2) Interest shall accrue on the outstanding principal balance at the rate of 5.25% per year beginning on the Effective Date; (3) Interest only shall be payable monthly for the first 12 months following the Effective Date, with the first payment due one month after the Effective Date; (4) beginning with the thirteenth (13th) month after the Effective Date, equal monthly payments of principal and interest sufficient to amortize the outstanding principal balance over 30 years; and (5) the entire, unpaid balance shall be due and payable March 1, 2016.  In addition, monthly escrow payments equal to 1/12th of the estimated property taxes and insurance premiums for the insurance required to be kept on the Property under the "A" Note and related loan documents shall be made.  All payments are due on the same day of each month as the Effective Date.  Otherwise, all other terms of the "A" Note remain unchanged. Class 3 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full.

**The Class 3 creditor is impaired.**

<u>CLASS 4. Allowed Secured Claim of the Holder of the "B" Note</u>

The Allowed Secured Claim of the Holder of the "B" Note shall be paid as follows: (1) The principal amount of the "B" Note shall be the outstanding principal balance as of the Effective Date; (2) Interest shall accrue on the outstanding principal balance at the rate of 5.25% per year beginning on the Effective Date; (3) Interest only shall be payable monthly for the first twelve (12) months following the Effective Date, with the first payment due one (1) month after the Effective Date; (4) beginning with the thirteenth (13th) month after the Effective Date, equal monthly payments of principal and interest sufficient to amortize the outstanding principal balance over 30 years; and (5) the entire, unpaid balance shall be due and payable March 1, 2016. All payments are due on the same day of each month as the Effective Date. Otherwise, all other terms of the "B" Note remain unchanged. Class 4 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full.

**The Class 4 is impaired.**

CLASS 5. Allowed Secured Claim of Taxing Authorities   Class 5 Claimants shall be paid the amounts of their Allowed Claims and all unpaid post-petition taxes together with interest at 12.0% per year in equal monthly installments sufficient to fully amortize the balance due no later than July 9, 2015 beginning on the Effective Date. Class 5 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full. The member of Class 5 is the Brazoria County Tax Assessor-Collector.

**The Class 5 is impaired.**

CLASS 6. Allowed Secured Claim of Cemex Construction Materials, LP

The Allowed Secured Claim of Cemex Construction Materials, LP is deemed to be zero for purposes of the Plan as the superior liens equal or exceed the value of the Property. The balance of the claim of Cemex Construction Materials, LP shall be a Class 9 (Unsecured) Claim.

**The Class 6 creditor is impaired.**

CLASS 7. Allowed Secured Claim of JB Contractors & Development, LLC

The Allowed Secured Claim of JB Contractors & Development, LLC is deemed to be zero for purposes of the Plan as the superior liens equal or exceed the value of the Property. The balance of the claim of JB Contractors & Development, LLC shall be a Class 9 (Unsecured) Claim.

**Class 7 is impaired.**

CLASS 8. Allowed Priority Claim of the IRS

The Allowed Priority Claim of the IRS shall be paid in equal monthly installments sufficient to fully amortize the balance due no later than July 9, 2015 beginning on the Effective Date.

**Class 8 is impaired.**

Class 9.   Allowed Unsecured Claims

Class 9 claimants shall be paid the Allowed Amounts of their claims pro-rata in 60 equal installments beginning on the Effective Date.  No insider claims will be paid until the Allowed Amounts of all other Class 9 Claims are paid in full.  The members of Class 9 and the amounts of the claims scheduled by the Debtor or filed by the creditor are shown on Exhibit 1.

**Class 9 is impaired.**

Class 10.  Administrative Convenience Class

Any member of any other class whose Allowed Claim is equal to or greater than $500.00 may elect to be paid $250.00 on the Effective Date in full satisfaction of the Allowed Amount of its Claim.

**Class 10 is impaired.**

Class 11.  Holders of Equity Interests

The partnership interests held by the general and limited partners of the Debtor shall be retained, but shall not re-vest until all other Allowed Claims have been paid in full.  The Class 11 Claimants will receive nothing unless all other classes are paid the Allowed Amounts of their claims in full.

**Class 11 is impaired.**

V.      PLAN OF REORGANIZATION.

A.      Summary of Plan of Reorganization.

Attached to this Disclosure Statement is a complete copy of the Plan of Reorganization.  For specific details of the Plan of Reorganization, reference should be made to the Plan in its entirety. The summary provided in this Disclosure Statement is merely for the convenience of anyone reading the Disclosure Statement and to the extent that this summary in any way conflicts with the actual Plan, the terms of the Plan will prevail.

The Debtor proposes to remain in business, continuing its efforts to lease and operate the Property.

See Section IV above for a summary of the treatment of each Class under the Plan.

B.      Future Management of the Debtor.

Following Confirmation, the manager described in Section II C will remain as the operations manager of the Reorganized Debtor.

C.    Feasibility of the Plan.

The Plan is feasible because it allows the Debtor to lease and operate the Property, utilizing the Registry Funds to supplement the required Plan payments to C-III, administrative and priority claims.  Any additional funds recovered relative to the Nationwide Lawsuit may also be used to supplement the cash flow from the Debtor's operations, although the Debtor does not anticipate that such will be need to fund the Plan. The Plan allows the Debtor to continue its operations and provide a dividend to unsecured creditors that a liquidation would not.

Exhibit 3 contains the Debtor's projections of income and expenses for the first sixty months of the Plan following the Effective Date.

D.    Alternatives to the Debtor's Plan.

The Debtor does not believe any Plan other than the one it has proposed is feasible for the reorganization of the Debtor.  Absent confirmation of the Plan, the Debtor expects that the holders of the "A" and "B" Notes will foreclose on the Property, resulting in no payment to any other creditor.

In the event of a Chapter 7 liquidation, the Code would provide for priorities of payment. Administrative Claims would consist of the attorney's fees for the Debtor, the professional fees for the Debtor, all expenses of maintaining the Estate and all post-petition taxes owing by the Debtor. Section III(D) of this Disclosure Statement is an estimate of the results of a liquidation of the Debtor's assets.

E.    Risk to Creditors Under the Debtor's Plan.

The principal risks that creditors will incur under the proposed Plan are (the income from the Property combines with the Registry Funds will be insufficient to fully fund the Plan. While the Debtor does not believe that these are significant risks, there is no guarantee that events will go as projected.  It should be pointed out, however, that all creditors will receive more if this Plan is confirmed rather than through a Chapter 7 liquidation.

F.    Remedies to Creditors in the Event of Debtor's Default Under the Plan

In the event that the Debtor defaults under the Plan before the Plan is substantially consummated, a creditor may move the Court to convert the case to a case under Chapter 7 of the Bankruptcy Code. In the event that the Debtor defaults under the Plan after the Plan has been substantially consummated and a final decree has been entered, creditors may pursue their state law remedies under against the Debtor as if the Plan were a contract between the Debtor and its creditors.

VI.    GENERAL INFORMATION ABOUT THE CLAIMS PROCEDURE.

A.    Procedures for Resolving Contested Claims.

The Debtor-in-Possession, or any party in interest may file with the Bankruptcy Court an objection to the Proof of Claim filed by any party or Claimant.  Any objection must comply with Local Bankruptcy Rule 3007, be in writing, set out the name of the Creditor or Interest holder who filed the Claim (and any assignee), the dollar amount of the Claim and the character of the Claim.

Each specific ground for objection or defense to the Claim shall be listed in a separate paragraph. Service of the objection shall be made upon the attorney of record for the Claimant (or the Creditor or Interest holder directly if not represented by an attorney), and the parties entitled to notice under Local Rule 3007. A certificate of service shall promptly be attached to each objection and shall comply with Local Bankruptcy Rule 9013(f).

If an objection to a Claim is filed the Creditor shall file a response to any such objection within twenty-one (21) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for objection to each ground or defense, shall list the names and addresses of any and all witnesses to be called in support of the response, and shall include copies of all documents (including invoices, security documents and the like) relied upon by the non-consenting party to support allowance of the Claim or interest. Copies of such response shall be served upon the Debtor, and attorneys for the Debtor. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the 20-day period, the Court may enter an order without further notice or hearing. In the event a timely non-consenting response is filed, the Court shall set a hearing.

An objection to a rejection claim filed pursuant to Section 7.01 of the Plan must be filed by the Distribution Date or such claim will be deemed an Allowed Class 9 claim.

The Debtor plans to object to the claim of Cemex Construction Materials, LP, JB Contractors & Development, LLC, Cross Check, and Gillman & Allison.

B.    <u>Disputed, Contingent or Unliquidated Claims</u>.

If a Claim is scheduled in the Schedules as disputed, contingent or unliquidated no distribution will be made to the holder of such a Claim unless a Proof of Claim was filed by November 15, 2010 which is the bar date established by the Court.

C.    <u>Pending Litigation, Actions Pertaining to Fraudulent Transfers, Voidable Preferences and Equitable Subordination</u>.

The Nationwide Lawsuit was removed on August 20, 2010 to the United States Bankruptcy Court for the Southern District of Texas, Galveston Division by City National Bank of Los Angeles, California ("CNB"). The Debtor, together with five other related entities, being Pearland Sunrise Lake Center, LP ("SRLC"), Southeast Regency Medical Center, LP ("SERMC"), Pearland Sunrise Lake Village II, LP ("SLRVII"), Pearland Corners II, LP ("PCII") and Park Avenue Townhomes, LLC ("PATH") and the principals of such entities filed suit against Nationwide Property and Casualty Insurance Company, D&B Consulting, LLC dba The Bazzy Agency, Rachael Bazzy and Christopher Bazzy on or about April 7, 2009 as a result of the failure to provide wind and hazard insurance coverage on the various properties owned by such entities. The Property, together with such other properties, was damaged when Hurricane Ike passed near the properties.

CNB intervened as the lienholder on the SRLC and SERMC properties in the Nationwide Lawsuit. C-III intervened as the lienholder on the Property. OmniBank intervened as the lienholder on the SRLVII property.

The Nationwide Lawsuit was settled and funds were deposited into the registry of the 23rd District Court of Brazoria County, Texas. An allocation of the settlement proceeds, net of attorneys fees to Gillman & Allison, PC, was made by the court. This is the source of the Registry Funds. Of the settlement proceeds, the only distribution to date has been to Gillman & Allison, PC.

SRLC is the debtor in Case No. 10-11927, SERC the debtor in Case No. 10-11923, SRLVII the debtor in Case No. 10-11925, and PCII the debtor in Case No. 10-12514, all pending in the Bankruptcy Court.

After removal, CNB filed a motion to transfer the Nationwide Lawsuit to the Bankruptcy Court. Such Motion was granted on October 19, 2010 (together with denial of a motion to remand the case to the District Court of Brazoria County) and in November 2010 the Nationwide Lawsuit was docketed as adversary no. 10-01145 in the Bankruptcy Court.

The Debtor intends to file a motion to administratively consolidate this case with the SRLC, SERC, SRLVII and PCII cases.

VII.   <u>CONFIRMATION OF THE DEBTOR'S PLAN</u>.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

A.   <u>Confirmation Hearing</u>.

The Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the plan, at which any party-in-interest may object to Confirmation of the Plan.

The hearing on Confirmation of the Plan is set for _____ at _____. The hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the hearing or any adjournment thereof. <u>Any objection to Confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served upon Debtor's counsel at the address listed below, together with proof of service, on or before _____, which is the date set by the Bankruptcy Court</u>:

> Frank B. Lyon
> 6836 Austin Center Boulevard
> Suite 150
> Austin, Texas  78731
> (512) 345-8964
> (512) 697-0047 (facsimile)

Objections to Confirmation of the Plan are governed by Bankruptcy Rule 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

B.   <u>Requirements for Confirmation of Debtor's Plan</u>.

At the hearing on Confirmation of the Plan, the Bankruptcy Court shall determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the Plan. These requirements are as follows:

1.  The Plan complies with the applicable provisions of the Bankruptcy Code.

2.  The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.  The Plan has been proposed in good faith and not by any means forbidden by law.

4.  Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses, or in connection with the case or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before the Confirmation of the Plan is reasonable, or if such payments is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

5.  The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Trustee under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and Equity Security Holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for each insider.

6.  Any governmental regulatory commission with jurisdiction, after Confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.  With respect to each impaired class of Claims or Equity Security Holders, with each holder of a Claim or Equity Security Interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Security interest, property of a value, as of the Plan Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code.

8.  Each class of Claims or Equity Security interest has either accepted the plan or is not impaired under the Plan.

9.  Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative

Claims and Priority Claims will be paid in full on the Plan Effective Date and that Priority Tax Claims will receive an account of such Claims deferred cash payments, over a period not exceeding six years after the date of assessment of such Claim, of a value, as of the Plan Effective Date, equal to the allowed amount of such Claim.

10.    At least one class of Claims that is impaired under the Plan has accepted the plan, determined without including any acceptance of the Plan by any insider holding a Claim of such class.

11.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11 and that the proposal of the Plan is made in good faith.

The Debtor believes that the holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Plan Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

C.    <u>Cramdown</u>.

In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Proponents if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable". A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its Claims or Equity Security Interests. "Fair and equitable" has different meanings for Secured Claims and Unsecured Claims.

With respect to a Secured Claim "fair and equitable" means either: (i) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Plan's Effective Date at least equal to the value of such Secured Creditor's interest in the property securing its liens; or (ii) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of the sale, and such lien proceeds must be treated in accordance with clauses (i) and (iii) hereof; or (iii) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claims under the Plan.

With respect to an Unsecured Claim, "fair and equitable" means either (i) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (ii) the holders of the Claims and Equity Security interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the hearing for Confirmation of the Plan whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims. If the Bankruptcy Court determines that the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims, the Bankruptcy Court can confirm the Plan over the objection of any impaired class.

VIII. <u>VOTING PROCEDURES AND REQUIREMENTS</u>.

    A.    <u>Ballots and Voting Deadline</u>.

In addition to this Disclosure Statement and a copy of the Plan, each Creditor entitled to vote will hereafter be provided with a ballot to be used for voting to accept or reject to Plan, together with a postage paid return envelope.

In order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed and returned to the Bankruptcy Court prior to the hearing before the Bankruptcy Court requiring its approval of the Plan or at such other time as the Bankruptcy Court may set. The time and date of the hearing will be set forth in a notice to the Creditors.

Whether or not the Creditor entitled to vote expects to be present at the hearing, each Creditor is urged to complete, date, sign and properly mail (or fax) the ballot to the following address:

> Frank B. Lyon
> 6836 Austin Center Boulevard
> Suite 150
> Austin, Texas 78731
> (512) 345-8964
> (512) 697-0047 (fax)

    B.    <u>Creditors Entitled to Vote</u>.

Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) it has filed a Proof of Claim on or before the first date set by the Bankruptcy Court for such filings. Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allowed the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon application by the Creditor. Such application must be heard and determined by the Bankruptcy Court at such time as specified by the Bankruptcy Court. A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

    C.    <u>Definition of Impairment</u>.

Under Section 1124 of the Bankruptcy Code, a class of Claims or Equity Security interests is impaired under a Chapter 11 plan unless, with respect to each Claim or interest of such class, the Plan:

1.    Leaves unaltered the legal, equitable, and contractual rights of the holder of such Claim or Equity Security interest; or

2.    Notwithstanding any contractual provision or applicable law that entitles the holder of a Claim or Equity Security interests to receive accelerated payments of his Claim or Equity Security interests after the occurrence of an default:

   a.    Cures any and such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default that consists of a breach of any provision relating to the insolvency or financial condition of the Debtor at any time before the closing of the case, the commencement of a case under the Bankruptcy Code, or the appointment of or taking possession by a trustee in a case under the Bankruptcy Code;

   b.    Reinstates the maturity of such Claim or Equity Security interest as it existed before the default;

   c.    Compensates the holder of such Claim or Equity Security interest for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

   d.    Does not otherwise alter the legal, equitable, or contractual rights to which such Claim or Equity Security interest entitles the holder of such Claim or Equity Security interest; or

3.    Provides that, on the Plan Effective Date, the holder of such Claim or Equity Security interest, receives, on account of such Claim or Equity Security interest, cash equal to:

   a.    With respect to a Claim, the allowed amount of such Claim; or

   b.    With respect to an Equity Security interest, if applicable, the greater of:

      (i)    Any applicable fixed liquidation preference; or

      (ii)    Any fixed price at which the Debtor, under the terms of the security, may redeem the security.

D.    <u>Classes Impaired Under the Debtor's Plan</u>.

   The following classes of Claims are impaired under the Plan, and Creditors holding Claims in such classes are entitled to vote to accept or reject the Plan:

   Class 3 - Allowed Secured Claim of the Holder of the "A" Note.
   Class 4 - Allowed Secured Claim of the Holder of the "B" Note.

Class 5 - Allowed Secured Claim of Taxing Authorities.
Class 6 - Allowed Secured Claims of Cemex Construction Materials, LP.
Class 7 - Allowed Secured Claim of JB Contractors and Development, LLC
Class 8 - Allowed Priority Claim of the IRS.
Class 9 - Allowed Unsecured Claims.
Class 10 - Administrative Convenience Class
Class 11 - Holders of Equity Interests.

E.      Vote Required for Class Acceptance.

The Bankruptcy Code defines acceptance of a Plan by a class of Creditors or Equity Security interest holders as acceptance by holders of two-thirds (2/3) in dollar amount and a majority in number of the Claims or Equity Security interests of that class which actually cast ballots for acceptance or rejection of the Plan; i.e., acceptance takes place only if sixty-six and two thirds percent (66-2/3%) in amount of Claims and Equity Security interests in each class and more than fifty percent (50%) of Claims or Equity Security interests voting in each class cast their ballots in favor of acceptance.

IX.     IMPLEMENTATION OF THE PLAN.

When the Plan is approved by the Bankruptcy Court, the Bankruptcy Judge will sign an Order Confirming Plan; however, the Debtor will retain its authority and will continue to operate its business and discharge its duties under the Bankruptcy Code until the Effective Date of the Plan.

A.      Effective Date of the Plan.

The Effective Date of the Plan will be the first business day following the day the Confirmation Order becomes a Final Order (which will be the first business day following ten days after the Confirmation Date if no appeal is filed) or such other date as the Court may set.

B.      Payment of Claims.

The Plan provides that payments will begin on the Effective Date.

C.      Pro Rata Payments.

Where distributions are made to a class and if there are insufficient funds to pay all Allowed Amounts of Claims of such class, the Debtor shall make distributions pro rata based upon the Allowed Amounts of the Claims.  If a payment to a creditor must be paid pro rata, that means that each creditor is to receive a payment in the proportion that its Claim bears to the total amount of Claims in its class.

D.      Modification of the Plan.

Section 1127(a) of the Code permits the Debtor to amend or modify the Plan at any time prior to Confirmation.  Post-Confirmation modifications of the Plan are allowed under Section 1127(b) of the Code, if the proposed modification is offered before the Plan has been substantially consummated or pursuant to an article of the confirmed Plan authorizing the intended modification.  The Debtor

reserves the right to amend or modify the Plan at any time at which such modification is permitted under the Bankruptcy Code.

In the event that the Debtor proposes to modify the Plan prior to the Confirmation Order, further disclosure pertaining to the proposed modification will be required only if the Bankruptcy Court finds, after a hearing, that the pre-Confirmation modifications adversely change the treatment of any Creditor or Equity Security interest holder who has previously accepted the Plan. If the proposed pre-Confirmation modification is material and adverse, or if a post-Confirmation modification is sought, the Proponents intend to supplement this Disclosure Statement to describe the changes made in the Plan and the reasons for any proposed modifications.

     E.     <u>Retention of Jurisdiction</u>.

As set forth in the Plan, the Bankruptcy Court will retain jurisdiction over substantially all matters arising in connection with the Chapter 11 Case and the Plan.

X.     <u>SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE BANKRUPTCY CASE</u>.

The following is a summary of significant orders entered in this case between the petition date and the date of the filing of this Disclosure Statement:

| <u>Date</u> | <u>Title</u> | <u>Summary</u> |
|---|---|---|
| 7-09-10 | Order for Relief | Chapter 11 petition filed. |
| 09-20-10 | Interim Order Granting and Conditioning Debtor's Use of Cash Collateral | Allowed Debtor to use cash collateral for operating expenses and set adequate protection payments to C-III. |
| 10-06-10 | Final Agreed Order Granting and Conditioning Debtor's Use of Cash Collateral through 11-30-10 | Allowed Debtor to continue to use cash collateral through 11-30-10 and set adequate protection payments to C-III. |

XI.     <u>FEDERAL INCOME TAX CONSEQUENCES</u>.

The Debtor believes that all payments received by creditors under the Plan will be taxed as ordinary income to the receiving creditor. Depending upon a creditor's individual tax situation, a creditor may be able to classify any unpaid Claim as a deductible bad debt expense.

**The Debtor is unaware of any adverse tax consequences of the Plan; however, each creditor is strongly advised to consult its own tax advisor with respect to its treatment under the Plan.**

XII.    CONCLUSION.

The Debtor believes that a reorganization of the Debtor pursuant to the Plan will provide an opportunity for Creditors to receive more than would be received by liquidation of its assets under Chapter 7 of the Bankruptcy Code.  Accordingly, the Debtor urges you to vote in favor of the Plan.


DATED this 30th day of November, 2010.

PROPONENT:

PEARLAND SUNRISE LAKE VILLAGE I, LP
DEBTOR IN POSSESSION

LAW OFFICES OF FRANK B. LYON
Northpoint Centre One, Suite 150
6836 Austin Center Boulevard
Austin, Texas  78731
512/345-8964
512/345-4393 (fax)


By: /s/ Frank B. Lyon_____
    FRANK B. LYON
    State Bar No. 12739800

ATTORNEY FOR DEBTOR

By:  Pearland Sunrise Lake Village I, GP, LLC

By:  ___/s/ Wayne Ausmus_____
     Wayne Ausmus, Operations Manager

# SUMMARY OF EXHIBITS

| Number | Description |
|--------|-------------|
| 1 | October  2010 Monthly Operating Report |
| 2 | Schedule B |
| 3 | Projections |