## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-11926 |
| | § | (CHAPTER 11) |
| PEARLAND SUNRISE | § | |
| LAKE VILLAGE I, LP | § | |
| | § | |
| DEBTOR | § | |

### PLAN OF REORGANIZATION PROPOSED BY DEBTOR DATED NOVEMBER 30, 2010 AS MODIFIED AUGUST 19, 2011

Frank B. Lyon
Attorney at Law
Northpoint Centre I – Suite 150
6836 Austin Center Blvd.
Austin, Texas 78731
(512) 345-8964
(512) 345-4393 (facsimile)

ATTORNEY FOR DEBTOR-IN-POSSESSION,
PEARLAND SUNRISE LAKE VILLAGE I

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 10-11926** |
| | § | **(CHAPTER 11)** |
| **PEARLAND SUNRISE** | § | |
| **LAKE VILLAGE I, LP** | § | |
| | § | |
| **DEBTOR** | § | |

**PLAN OF REORGANIZATION PROPOSED BY DEBTOR**
**DATED NOVEMBER 30, 2010 AS MODIFIED AUGUST 19, 2011**

Pearland Sunrise Lake Village I, LP ("Debtor") proposes the following Plan of Reorganization ("Plan") Dated November 30, 2010 pursuant to chapter 11, title 11, United States Code ("Bankruptcy Code" or "Code") on behalf of the Debtor.

**ARTICLE I**
**DEFINITIONS AND USE OF TERMS**

1.01    **Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

1.01(a)     **"A" Note** means that certain promissory note dated February 1, 2006 in the original principal sum of $12,850,000.00 from the Debtor payable to C-III which is secured by the Property.

1.01(b)     **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against Debtor and Debtor's property under 28 U.S.C. § 1930, which arose after July 9, 2010.

1.01(c)     **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a Proof of Claim, Proof of Interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.01(d)     **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01(e)     **"B" Note** means that certain promissory note dated February 1, 2006 in the original principal sum of $800,000.00 for the Debtor payable to C-III, which is secured by the Property.

1.01(f)     **Bankruptcy Code** or **Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01(g)     **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's chapter 11 case.

1.01(h)     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's chapter 11 Case.

1.01(i)     **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.

1.01(j)     **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

1.01(k)     **C-III** means C-III Asset Management, LLC

1.01(l)     **Case** means this chapter 11 bankruptcy case in this Bankruptcy Court.

1.01(m)     **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.01(n)     **Claimant** means any person or entity having or asserting a Claim in this case.

1.01(o)     **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article V of this Plan.

1.01(p)     **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

1.01(q)     **Confirmation Date** means the date on which the Confirmation Order is entered.

1.01(r)    **Confirmation Order** means the Order of the Court confirming the Plan pursuant to 11 U.S.C. § 1129.

1.01(s)    **Contested** when used with respect to a Claim means a Claim against the Debtor that (a) is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to an objection being timely filed and has not been denied by Final Order.  To the extent an objection related to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.01(t)    **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

1.01(u)    **Cure Claim** means the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract which has been assumed pursuant to 11 U.S.C. § 365.

1.01 (v)    **Debtor** means Pearland Sunrise Lake Village I, LP, a Texas partnership which is the Debtor in the above-captioned chapter 11 Case.

1.01(w)    **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01(x)    **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

1.01(y)    **Estate** means the estate created pursuant to 11 U.S.C. § 541 with respect to the Debtor.

1.01(z)    **Equity Interest** means an equity security, as defined in 11 U.S.C. §101(16), including but not limited to all interests of members in a limited liability company and all rights associated therewith, and all Claims arising from or relating to such Equity Interest, including but not limited to Claims for rescission.

1.01(aa)    **Fee Claim** means a Claim under 11 U.S.C. § 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Case.

1.01(bb)    **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically with the Bankruptcy Court.

1.01(cc)     **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.01(dd)     **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

1.01(ee)     **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01(ff)     **Lien** shall mean a contractual or statutory lien against an interest of the Debtor in real or personal property.

1.01(gg)     **Nationwide Lawsuit** means Cause No. 43613 in the 23rd District Court of Brazoria County, Texas.

1.01(hh)     **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102 Code.

1.01(ii)     **Petition Date** means July 9, 2010, the date on which the Debtor filed its petition for relief in this Case.

1.01(jj)     **Plan** means this Plan of Reorganization, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

1.01(kk)     **Pre-petition** means prior to the Petition Date.

1.01(ll)     **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.01(mm)     **Pro-Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

1.01(nn)     **Property** means that certain real property and improvements owned by the Debtor located at 9415 Broadway, Pearland, Texas.

1.01(oo)     **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.01(pp)     **Registry Funds** means the sum of $901,382.98.

1.01(qq)     **Reorganized Debtor** means the Debtor-in-Possession after the Effective Date of the Plan.

1.01(rr)     **Rejection Claim** means any Claim arising pursuant to 11 U.S.C. § 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to 11 U.S.C. § 365 or 1123(b)(2).

1.01(ss)     **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01(tt)     **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim

1.02     **Gender.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

1.03     **Terms Defined in the Bankruptcy Code.**  Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.04     **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05     **Computation of Time.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## BASIS OF PLAN

2.01 **Generally.** The Plan is a plan of reorganization. Debtor owns the Property, which consists of approximately 5.8 acres of land at 9415 Broadway, Pearland, Texas together with 36,008 square feet of retail space and 42,973 square feet of office space. The Plan proposes to repay the Debtor's creditors through the operation of the Property, the Registry Funds and the potential recovery of certain fees collected by the attorneys for the Debtor and others in the Nationwide Lawsuit.

## ARTICLE III
## PROVISIONS APPLICABLE TO ALL CLAIMS

3.01 **Treatment of Claims.** This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to chapter 7 of the Bankruptcy Code.

3.02 **Allowed Claims**. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03 **Amount of Claims**. If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control unless the Creditor files a Proof of Claim in a different amount or a party in interest files an objection to the scheduled claim. If a creditor files a Proof of Claim, then the amount stated in the Proof of Claim shall control unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Proof of Claim or a scheduled claim, then the amount determined by the Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a Proof of Claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.04 **Allowance of Post-Petition Interest, Fees and Costs**. Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs.

3.05 **Filing of Claims Arising from Rejection of Unexpired Leases or Executory Contracts.** Any claims arising from the rejection of unexpired leases or executory contracts shall be filed by the date specified in the order rejecting such lease or contract. If no date is specified, the date for filing a rejection claim shall be deemed to be the later of thirty (30) days after the Effective Date or thirty (30) days after entry of the order rejecting the lease or contract.

3.06 **Filing of Administrative Claims**. Any requests for allowance of Administrative Expense Claims shall be filed within thirty (30) days after the Effective Date or shall be barred.

3.07    **Cure Claims**.  Any Cure Claims shall be filed within thirty (30) days after the Effective Date or shall be barred unless otherwise agreed to by the parties.

3.08    **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within sixty (60) days after the Effective Date or shall be barred.

3.10    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such claim is filed.  Any Proof of Claim filed after the Bar Date(s) set by the Court shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a Proof of Claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.11    **Distributions on Disputed Claims.**  No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  When and if a disputed Claim becomes an Allowed Claim, Debtor shall at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claimants in the Class.  If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.  In addition, any party authorized by the Bankruptcy Code may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

3.12    **Third Party Obligations**.  Except as otherwise provided herein, to the extent that any third party is jointly liable with the Debtor upon a Claim, whether by contract or by operation of law, such obligation shall remain in force with respect to the Claim as modified by this Plan but not otherwise.  All guarantees and other obligations shall be deemed modified to reflect the restructuring of the primary obligations under this Plan.  To the extent that a Claim is classified in more than one class, the liability of the third party shall extend to the obligations under each applicable class.

## ARTICLE IV
## ADMINISTRATIVE AND PRIORITY CREDITORS

4.01    **Administrative Expenses.** The administrative expenses of the Debtor's chapter 11 case allowed pursuant to Section 503 of the Code and each Allowed Claim entitled to priority pursuant to Section 507(a)(2) or (6) of the Code shall be paid in full upon the Effective Date in cash, or upon such other terms as may be agreed upon by the holder of such allowed expense or Allowed Claim and the Debtor.  Where required by the Code, and upon approval by the Court, Debtor shall pay administrative expenses on a current basis.

## ARTICLE V
## CLASSIFICATION OF CLAIMS AND INTERESTS

5.01    **Classification.** Claims and interests are classified as follows:

Class 1.            Allowed Administrative Claims under Section 503(b)(2), (3), (4), (5), or (6) of the Code.

Class 2.            Allowed Priority Claims pursuant to Section 507(a)(4), (5) or (6) of the Code.

Class 3.            Allowed Secured Claim of the Holder of the "A" Note.

Class 4.            Allowed Secured Claim of the Holder of the "B" Note.

Class 5.            Allowed Secured Claim of Taxing Authorities.

Class 6.            Allowed Secured Claims of Cemex Construction Materials, LP.

Class 7.            Allowed Secured Claim of JB Contractors and Development, LLC

Class 8.            Allowed Priority Claim of the IRS.

Class 9.            Allowed Unsecured Claims.

Class 10.          Holders of Equity Interests.

## ARTICLE VI
## TREATMENT OF CLAIMS AND INTERESTS

6.01 **Class 1 Claims - Allowed Administrative Claims.** The Allowed Amount of Administrative Claims allowed under sections 503(b)(2) through (b)(6) of the Code shall be paid in cash in full on the Effective Date. The members of Class 1 are the Debtor's attorney, Frank B. Lyon and its accountant, Dave Patterson, CPA. Class 1 is not impaired.

6.02 **Class 2 Claims - Allowed Priority Claims.** The Allowed Amount of Class 2 Claims shall be paid in full on the Effective Date. There are no known members of Class 2. Class 2 is not impaired.

6.03 **Class 3 Claim - Allowed Secured Claim of the Holder of the "A" Note.** The Allowed Secured Claim of the Holder of the "A" Note shall be paid as follows: (1) The principal amount of the "A" Note shall be the outstanding principal balance as of the Petition Date; (2) Interest shall accrue on the outstanding principal balance at the rate of 5.25% per year beginning on the Effective Date; (3) Interest only shall be payable monthly for the first 12 months following the Effective Date, with the first payment due one month after the Effective Date; (4) beginning with the thirteenth (13th) month after the Effective Date, equal monthly payments of principal and interest sufficient to amortize the outstanding principal balance over 30 years; and (5) the entire, unpaid balance shall be due and payable March 1, 2016. In addition, monthly escrow payments equal to 1/12th of the estimated property taxes and insurance premiums for the insurance required to be kept on the Property under the "A" Note and related loan documents shall be made. All payments are due on the same day of each month as the Effective Date. Otherwise, all other terms of the "A" Note remain unchanged. Class 3 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full. Pursuant to the Court's Final Cash Collateral Order at docket # 37 and the Debtor's schedules, the Debtor stipulates and acknowledges that the "A" and "B" Notes (collectively, the "Secured Notes") total at least $13.65 million as of the Petition Date. Class 3 is impaired.

6.04 **Class 4 Claim – Allowed Secured Claim of the Holder of the "B" Note.** The Allowed Secured Claim of the Holder of the "B" Note shall be paid as follows: (1) The principal amount of the "B" Note shall be the outstanding principal balance as of the Effective Date; (2) Interest shall accrue on the outstanding principal balance at the rate of 5.25% per year beginning on the Effective Date; (3) Interest only shall be payable monthly for the first twelve (12) months following the Effective Date, with the first payment due one (1) month after the Effective Date; (4) beginning with the thirteenth (13th) month after the Effective Date, equal monthly payments of principal and interest sufficient to amortize the outstanding principal balance over 30 years; and (5) the entire, unpaid balance shall be due and payable March 1, 2016. All payments are due on the same day of each month as the Effective Date. Otherwise, all other terms of the "B" Note remain unchanged. Class 4 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full. Pursuant to the Court's Final Cash Collateral Order at docket # 37 and the Debtor's schedules, the Debtor stipulates and acknowledges that the "A" and "B" Notes (collectively, the "Secured Notes") total at least $13.65 million as of the Petition Date. Class 4 is

impaired.

6.05 **Class 5 Claims - Allowed Secured Claim of Taxing Authorities.** Class 5 Claimants shall be paid the amounts of their Allowed Claims and all unpaid post-petition taxes together with interest at 12.0% per year in equal monthly installments sufficient to fully amortize the balance due no later than July 9, 2015 beginning on the Effective Date. Class 5 Claimants shall retain their existing liens to secure their Allowed Claims until paid in full. The member of Class 5 is the Brazoria County Tax Assessor-Collector. Class 5 is impaired.

6.06 **Class 6 Claim - Allowed Secured Claim of Cemex Construction Materials, LP.** The Allowed Secured Claim of Cemex Construction Materials, LP is deemed to be zero for purposes of the Plan. The balance of the claim of Cemex Construction Materials, LP shall be a Class 9 (Unsecured) Claim. To the extent Cemex has an allowed claim, Cemex shall be allowed to vote that claim only in Class 9. Class 6 is impaired.

6.07 **Class 7 Claim - Allowed Secured Claim of JB Contractors & Development, LLC.** The Allowed Secured Claim of JB Contractors & Development, LLC is deemed to be zero for purposes of the Plan. The balance of the claim of Cemex Construction Materials, LP shall be a Class 9 (Unsecured) Claim. To the extent JB has an allowed claim, JB shall be allowed to vote that claim only in Class 9. Class 7 is impaired.

6.08 **Class 8 - Allowed Priority Claim of the IRS.** The Allowed Priority Claim of the IRS shall be paid in equal monthly installments sufficient to fully amortize the balance due no later than July 9, 2015 beginning on the Effective Date. Class 8 is impaired.

6.09 **Class 9 – Allowed Unsecured Claims.** Class 9 claimants shall be paid the Allowed Amounts of their claims pro-rata in 60 equal installments beginning on the Effective Date. No insider claims will be paid until the Allowed Amounts of all other Class 9 Claims are paid in full. The members of Class 9 and the amounts of the claims scheduled by the Debtor or filed by the creditor are shown on Exhibit 1. Class 9 is impaired.

6.10 **Class 10 –Holders of Equity Interests.** The partnership interests held by the general and limited partners of the Debtor shall be retained, but shall not re-vest until all other Allowed Claims have been paid in full. The Class 10 Claimants will receive nothing unless all other classes are paid the Allowed Amounts of their claims in full. Class 10 is impaired.

**ARTICLE VII**
**IMPLEMENTATION OF THE PLAN**

7.01 **Implementation of the Plan.** The Plan will be implemented pursuant to 11 U.S.C. § 1123(a) as set forth above, that is, the commencement of payments to creditors and the satisfaction of the liens of secured creditors with Allowed Claims.

7.02 **In General.** If the Plan is approved by the Court, an Order confirming Plan will be signed. The Debtor will continue to operate as a debtor-in-possession and discharge its duties

under chapter 11 until the Effective Date of the Plan.  Upon the Effective Date of the Plan, the Reorganized Debtor will continue to operate for the benefit of Debtor's Creditors in compliance with the terms of Debtor's Chapter 11 Plan.

7.03     **Sources of Funds for Implementation of the Plan.**

7.03(a)  **Operations of the Property.**  The Reorganized Debtor will continue to operate the Property.  The income from the Property (rents from Tenants) will be used to fund the operating expenses of the Property and to fund the Plan.

7.03(b)  **Registry Funds.**  The Registry Funds will be used to supplement the income from the operation of the Property to make the payments to the Holders of the "A" and "B" Notes and payment of administrative and priority claims due under the Plan.

7.03(c)  **Recovery of Any Additional Amounts from the Nationwide Lawsuit.** Any additional amounts recovered as a result of, or related to, the Nationwide Lawsuit, will be used to the extent necessary to fund the payments due under the Plan.

7.04     **Authorization.**  Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code.  To this end, the Debtor is authorized and directed to execute all documents necessary to effectuate the terms of the Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS

8.01     **Assumption and Rejection; Rejection Claims.**  All executory contracts and unexpired leases relating to general corporate operations, and all of the Debtor's leases with the tenants in the Property as of the Confirmation Date shall be assumed under sections 365 and 1123(b)(2) of the Code as of the Confirmation Date.  Any person or entity claiming rights under an executory contract or unexpired lease rejected pursuant to the provisions of this Article VIII shall have thirty days to file a proof of claim in this case, or such additional time as the Court, before that date, may allow. Any such claim not timely filed will not be allowed. Any Allowed Claim for rejection of an executory contract or unexpired lease shall be a Class 9 Claim.

8.02     **Objections to Rejection Claims.**  Any objection to a rejection claim filed pursuant to Section 8.01 above must be filed on or before the Effective Date or such claim will be deemed to be an Allowed Class 9 Claim.  If an objection to such a claim is filed, the amount of cash equal to what would be distributed if such claim were allowed in full shall be held in reserve pending the determination of the objection.  Upon determination of such objection, the cash held in reserve shall be distributed to the claimant or pro rata to other Allowed Class 9 claimants as is appropriate.

## ARTICLE IX
## EFFECT OF CONFIRMATION

9.01 **Vesting of Property**. Except to the extent provided in the Plan, and subject to Section 12.03 upon the entry of a final decree, the Reorganized Debtor shall be vested with title to all property of the estate and all claims or causes of action arising under the Code in favor of Debtor as of the Effective Date. Provided, however, that in the event of an uncured default under the Plan by the Debtor prior to substantial consummation of the Plan, all of such property and claims shall revest in the Estate upon conversion of this case to Chapter 7 as allowed under Section 12.03.

9.02. **Plan Binding.** Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and its Creditors and the holders of its Partnership Interests existing as of the Effective Date, whether or not the Claim or Partnership Interest is impaired under the Plan and whether or not such Creditor or Partnership Interest Holder has accepted the Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

9.03 **Reliance on other Parties.** In connection with the Plan, Debtor and its respective affiliates, officers, directors, shareholders, members, representatives, attorneys, financial advisor, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor and such reliance shall presumptively establish good faith.

9.04. **Permanent Injunction.** Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor. From and after the Confirmation Date, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or its Assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or its assets; (c) from creating perfecting, or enforcing any encumbrance or any kind against the Debtor or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor except as may be allowed under title 11; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided however*, that each holder of a contested claim may continue to prosecute its proof of claim in the bankruptcy court and all holder of clams shall be entitled to enforce his rights under the plan and any agreements executed or delivered pursuant to or in connection with the Plan.

## ARTICLE X
## MODIFICATION OF PLAN

10.01 **Pre-Confirmation Modification.** Modifications of the Plan may be proposed in

writing by the proponents at any time before Confirmation of the Plan, provided that such Plan, as modified, meets the requirements of sections 1122 and 1123 of the Code, and the proponents shall have complied with section 1125 of the Code.

10.02  **Post-Confirmation Modification.** The proponents may modify the Plan at any time after Confirmation, but before substantial consummation, provided that the Plan, as modified, meets the requirements of section 1122 and 1123 of the Code and the Court, after notice and hearing, confirms such modified Plan under section 1129, and the circumstances warrant such modification.

10.03  **Deemed Acceptance or Rejection.** A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court, such holder changes its previous acceptance or rejection.

**ARTICLE XI**
**POST CONFIRMATION MATTERS**

11.01.  **Application for Final Decree.** The Debtor shall file an application for final decree as soon as is practicable but not later than one hundred and twenty (120) days after the Effective Date.  If the Plan cannot be substantially consummated as that term is defined in 11 U.S.C. §1101(2) during this time period or if there are still pending matters to be ruled upon by the Court, the Debtor shall seek an extension of such deadline from the Court.  If the Debtor fails to file an Application for Final Decree prior to such deadline or fails to timely request an extension of the same, then the Court, on its own motion or at the request of any party in interest, including the United States Trustee, may enter an order closing the Debtor's case.

11.02.  **U.S. Trustee**

11.02. (a)      **Fees.**  The Debtor shall continue to pay U.S. Trustee fees until the case is closed.

11.02. (b)      **Reports.**  The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee until the case is closed.

**ARTICLE XII**
**DEFAULT**

12.01.  **Default by Debtor.** In the event of a default by the Debtor under the Plan, creditors may exercise any rights granted to them under documents executed to evidence the Plan or any rights available to creditors under applicable non-bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any creditor alleging a default shall give the Debtor thirty (30) days notice and an opportunity to cure before exercising any rights available upon default.

Page 14 of 16

12.02. **Default by Creditor.** In the event of a default by a creditor, the Debtor may enforce this plan as a contract in a court of competent jurisdiction. The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured. The Debtor shall give the creditor thirty (30) days notice and an opportunity to cure before exercising this provision.

12.03. **Conversion to Chapter 7.** Conversion to Chapter 7 shall be an additional remedy for default prior to substantial consummation of the Plan.


## ARTICLE XIII
## RETENTION OF JURISDICTION

13.01 **Jurisdiction over Matters.** Until this case is closed, the Court shall retain jurisdiction to hear and determine all claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action arising prior to the Confirmation Date that may exist in favor of Debtor, to hear and determine all matters relating the administration of the Debtor's estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with section 1142 of the Code, including interpretation and implementation of the Plan and entry of a final decree.

## ARTICLE XIV
## MISCELLANEOUS

14.01 **Request for Relief Under 11 U.S.C. § 1129(b)**. In the event any impaired Class shall fail to accept this plan in accordance with 11 U.S.C. § 1129(a), Debtor reserves the right to, and does hereby request the Court confirm the Plan in accordance with 11 U.S.C. §1129(b).

14.02 **Revocation.** The debtor reserves the right to revoke and withdraw this plan at any time prior to the Confirmation Date.

14.03 **Effect of Withdrawal or Revocation.** If the Debtor revokes or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings further proceedings involving the debtor.

14.04 **Due Authorization by Creditors.** Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim commitments, agreements or understandings express or implied, that may defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

14.05 **Entire Agreement**. The Plan, as described herein, the Confirmation Order, and

all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

14.06 **Payments.**

14.06 (a) **Delivery.** Any payments or distributions made by the Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United Sates mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no poof of claim or proof of interest is filed) unless Claimant files with the Court and serves the Plan Agent with a change of address. All claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the debtor and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

14.06 (b) **Voided Checks.** Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the day the of delivery thereof. Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to who such check originally was issued. Any claim in respect of such a voided check must be made to the Debtor in writing within ninety (90) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

14.07 **Governing Law.** Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the Sate of Texas shall govern the construction and implementation of the plan and any agreements, documents, and instruments executed in connection with the plan, without regard to conflicts of law.

Dated: August 19, 2011.

Respectfully Submitted,

/s/ Frank B. Lyon
Frank B. Lyon
State Bar No. 12739800
6836 Austin Center Blvd., Suite 150
Austin, Texas 78731
512-345-8964
512-345-4393 (facsimile)
ATTORNEY FOR DEBTOR-IN-POSSESSION

# EXHIBIT 1

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**C.A. Garrard Company**<br>**19948 #B Highway 35**<br>**Alvin, TX 77511** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $2,850.00 |
| ACCT #:<br>**City of Pearland**<br>**PO Box 268**<br>**Pearland, TX 77588-2068** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $4,519.84 |
| ACCT #:<br>**Cory Davis Contracting**<br>**957 Nasa Parkway Suite #202**<br>**Houston, TX 77058** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $24,625.00 |
| ACCT #:<br>**CrossCheck**<br>**Attention: Gary Baca**<br>**540 El Dorado St. Suite 201**<br>**Pasadena, CA 91101** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | X | X | X | $120,120.00 |
| ACCT #:<br>**Direct Energy**<br>**1001 Liberty Ave.**<br>**Pittsburgh, PA 15222** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $26,744.38 |
| ACCT #:<br>**Earl Kirkland**<br>**3206 Bruno Way**<br>**Pearland, TX 77584** | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $600.00 |
| | | | | | Subtotal > | $179,459.22 |
| | | | | | Total ><br>(Use only on last page of the completed Schedule F.)<br>(Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | |

<u>    4    </u>continuation sheets attached

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Filter Services**<br>4560 W. 34th St., Ste. B<br>Houston, TX 77092 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $523.50 |
| ACCT #:<br>**Fire Safe Protection Services, LP**<br>PO Box 3264<br>Houston, TX 77253-3264 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $652.50 |
| ACCT #:<br>**Gilman & Allison**<br>c/o Brenton J. Allison, Douglas Gilman,<br>J.W. Wauson, F. Spagnoletti, M Phillips<br>9307 Broadway - Suite 407<br>Pearland, TX 77584 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | X | X | X | $760,617.09 |
| ACCT #:<br>**Hewitt Air Tex, Inc.**<br>15520 Lee Rd., Suite A<br>Humble, TX 77396 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $5,855.25 |
| ACCT #:<br>**John R. Carlew Trustee of**<br>**John R. Carlew Living Trust**<br>1111 Oak Park Lane<br>Friendswood, TX 77546 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $710,620.36 |
| ACCT #:<br>**Katrina Williams**<br>1306 Canterview Drive<br>Houston, TX 77048 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $2,563.72 |

Sheet no. __1__ of __4__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal > $1,480,832.42

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.
In re **Pearland Sunrise Lake Village I LP**     Case No. __10-11926__
                                                            (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>**Nationwide Insurance**<br>PO Box 514540<br>Los Angeles, CA 90051-4540 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $9,240.95 |
| ACCT #:<br>**O'Conner Commercial Tax Division**<br>2200 North Loop West, Suite 200<br>Houston, TX 77081 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $43,987.91 |
| ACCT #:<br>**Old Spring Glass**<br>20710 Sunshine Lane<br>Spring, TX 77388 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $9,669.45 |
| ACCT #:<br>**Page Partners**<br>2700 Post Oak Blvd. Suite 325<br>Houston, TX 77056 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $5,724.00 |
| ACCT #:<br>**Pronote, Inc.**<br>PO Box 4479<br>Houston, TX 77210-4479 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $2,805.21 |
| ACCT #:<br>**Robert's Property Tax, LLC**<br>PO Box 920817<br>Houston, TX 77292-0817 | | DATE INCURRED:<br>CONSIDERATION:<br>**Non-Purchase Money**<br>REMARKS:<br>**trade debt** | | | | $27,406.52 |

Sheet no. __2__ of __4__ continuation sheets attached to       Subtotal >     $98,834.04
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                                               Total >
                              (Use only on last page of the completed Schedule F.)
                         (Report also on Summary of Schedules and, if applicable, on the
                          Statistical Summary of Certain Liabilities and Related Data.)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See Instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #:<br>Sumsua Interests, Ltd.<br>10516 FM 1431 East<br>Marble Falls, TX 78654 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $700,620.32 |
| ACCT #:<br>T T Elfs & Plaster, LLC<br>4214 Mangum Rd.<br>Houston, TX 77092 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $13,385.00 |
| ACCT #:<br>Texas First Fidelity<br>350 Hickory Creek Rd<br>Marble Falls, TX 78654 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $1,397.50 |
| ACCT #:<br>ThyssenKrupp Elevator Corporation<br>14820 Tomball Pkwy, Suite 190<br>Houstin, TX 77080 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $8,030.50 |
| ACCT #:<br>Unisource Worldwide, Inc.<br>850 N. Arlington Heights, Rd.<br>Itsca, IL 60143 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $683.04 |
| ACCT #:<br>VFP Fire Systems<br>5041 Spencer Hwy, Suite 803<br>Pasadena, TX 77505 | | DATE INCURRED:<br>CONSIDERATION:<br>Non-Purchase Money<br>REMARKS:<br>trade debt | | | | $560.00 |

Sheet no. ___3___ of ___4___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal >   $724,676.36

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See Instructions above.) | CODEBTOR | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|
| ACCT #: <br> **Xcess Security Services, Inc.** <br> **8325 Broadway, Suite 202 PMB3** <br> **Pearland, TX 77581** | | DATE INCURRED: <br> CONSIDERATION: <br> **Non-Purchase Money** <br> REMARKS: <br> trade debt | | | | $2,566.28 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Sheet no. __4__ of __4__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

| | |
|---|---|
| Subtotal > | $2,566.28 |
| Total > <br> (Use only on last page of the completed Schedule F.) <br> (Report also on Summary of Schedules and, if applicable, on the <br> Statistical Summary of Certain Liabilities and Related Data.) | $2,486,368.32 |

# Western District of Texas
# Claims Register

### 10-11926-hcm Pearland Sunrise Lake Village I, LP

| | |
|---|---|
| **Bankruptcy Judge:** H. Christopher Mott | **Chapter:** 11 |
| **Office:** Austin | **Last Date to file claims:** 11/15/2010 |
| **Trustee:** | **Last Date to file (Govt):** |

---

| Creditor: (14583621)<br>IRS<br>Special Procedures Staff<br>300 E 8th Street<br>Stop 5022 AUS<br>Austin, TX 78701 | **Claim No: 1**<br>*Original Filed*<br>*Date:* 07/20/2010<br>*Original Entered*<br>*Date:* 07/20/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Hunka, Inge<br>*Modified:* |
|---|---|---|

| |
|---|
| Unsecured claimed: $5336.28 |
| Secured     claimed:       $0.00 |
| Priority    claimed:       $0.00 |
| **Total     claimed: $5336.28** |

| |
|---|
| *History:* |
| Details   1-1   07/20/2010 Claim #1 filed by IRS, total amount claimed: $5336.28 (Hunka, Inge ) |
| *Description:* |
| *Remarks:* |

---

| Creditor: (14599624)<br>Otis Elevator Company et al<br>c/o Treasury Services 1st. Fl.<br>1 Farm Springs<br>Farmington CT 06032 | **Claim No: 2**<br>*Original Filed*<br>*Date:* 07/23/2010<br>*Original Entered*<br>*Date:* 07/26/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Boyd, Laurie<br>*Modified:* |
|---|---|---|

| |
|---|
| Unknown claimed: $1375.18 |
| **Total     claimed: $1375.18** |

| |
|---|
| *History:* |
| Details   2-1   07/23/2010 Claim #2 filed by Otis Elevator Company et al, total amount claimed: $1375.18 (Boyd, Laurie ) |
| *Description:* |
| *Remarks:* |

---

| Creditor: (14627056)<br>City of Pearland<br>Linebarger Goggan Blair & Sampson LLP<br>c/o John P. Dillman<br>P.O. Box 3064<br>Houston, Texas 77253 | **Claim No: 3**<br>*Original Filed*<br>*Date:* 08/13/2010<br>*Original Entered*<br>*Date:* 08/13/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Dillman, John<br>*Modified:* |
|---|---|---|

| |
|---|
| Secured claimed: $19453.55 |
| **Total     claimed: $19453.55** |

| |
|---|
| *History:* |
| Details   3-1   08/13/2010 Claim #3 filed by City of Pearland, total amount claimed: $19453.55 (Dillman, John ) |

*Description:* (3-1) Ad Valorem Taxes

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (14628679)<br>ThyssenKrupp Elevator Corp.<br>Kathy Woods<br>2801 Network Blvd. #700<br>Frisco TX 75034 | **Claim No: 4**<br>*Original Filed*<br>*Date:* 08/13/2010<br>*Original Entered*<br>*Date:* 08/16/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Boyd, Laurie<br>*Modified:* |

  Unknown  claimed:  $10498.15
**Total      claimed: $10498.15**

*History:*
Details      4-1   08/13/2010 Claim #4 filed by ThyssenKrupp Elevator Corp., total amount claimed: $10498.15 (Boyd, Laurie )

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (14583630)<br>T T Eifs & Plaster, LLC<br>4214 Mangum Rd.<br>Houston, TX 77092 | **Claim No: 5**<br>*Original Filed*<br>*Date:* 11/03/2010<br>*Original Entered*<br>*Date:* 11/04/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Cano, Mary<br>*Modified:* |

**Total claimed:**

*History:*
Details      5-1   11/03/2010 Claim #5 filed by T T Eifs & Plaster, LLC, total amount claimed: $0 (Cano, Mary )

*Description:*

*Remarks:* (5-1) see claim

| | | |
|---|---|---|
| *Creditor:*      (14600910)   History<br>Oxford Development Corp<br>c/o Charles Long<br>1177 W. Loop South Ste 1300<br>Houston,TX 77027 | **Claim No: 6**<br>*Original Filed*<br>*Date:* 11/12/2010<br>*Original Entered*<br>*Date:* 11/12/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Long, Charles<br>*Modified:* |

  Unsecured claimed:  $250000.00
  Secured    claimed:   $20460.40
**Total      claimed: $270460.40**

*History:*
Details      6-1   11/12/2010 Claim #6 filed by Oxford Development Corp, total amount claimed: $270460.4 (Long, Charles )

*Description:*

*Remarks:*

| | | |
|---|---|---|
| *Creditor:*      (14583618)<br>Hewitt Air Tex, Inc.<br>15520 Lee Rd., Suite A<br>Humble, TX 77396 | **Claim No: 7**<br>*Original Filed*<br>*Date:* 11/12/2010<br>*Original Entered*<br>*Date:* 11/15/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Gil, Elizabeth<br>*Modified:* |

| Unknown claimed: $18770.23 | | |
|---|---|---|
| **Total** **claimed: $18770.23** | | |

| *History:* | | |
|---|---|---|
| Details | 7-1 | 11/12/2010 Claim #7 filed by Hewitt Air Tex, Inc., total amount claimed: $18770.23 (Gil, Elizabeth ) |

| *Description:* |
|---|
| *Remarks:* |

| *Creditor:* (14749959) History<br>C-III Asset Management LLC, as special servicer<br>c/o Eli Columbus or Erik Weiting Hsu<br>Winstead PC<br>1201 Elm Street, Suite 5400<br>Dallas, TX 75270 | **Claim No: 8**<br>*Original Filed Date:* 11/15/2010<br>*Original Entered Date:* 11/15/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Hsu, Weiting<br>*Modified:* 11/16/2010 |
|---|---|---|

| Unknown claimed: $13650000.00 | | |
|---|---|---|
| **Total** **claimed: $13650000.00** | | |

| *History:* | | |
|---|---|---|
| Details | 8-1 | 11/15/2010 Claim #8 filed by C-III Asset Management LLC, as special servicer, total amount claimed: $13650000 (Dozauer, Maria ) |

| *Description:* (8-1) see attached addendum |
|---|
| *Remarks:* (8-1) see attached addendum |

| *Creditor:* (14750231)<br>Cross Check Public Adjusters,Inc<br>Attn: Gary Baca<br>450 El Dorado St Ste 201<br>Pasadena, CA 91101-2508 | **Claim No: 9**<br>*Original Filed Date:* 11/12/2010<br>*Original Entered Date:* 11/15/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Cano, Mary<br>*Modified:* |
|---|---|---|

| Unknown claimed: $122617.07 | | |
|---|---|---|
| **Total** **claimed: $122617.07** | | |

| *History:* | | |
|---|---|---|
| Details | 9-1 | 11/12/2010 Claim #9 filed by Cross Check Public Adjusters,Inc, total amount claimed: $122617.07 (Cano, Mary ) |

| *Description:* |
|---|
| *Remarks:* |

| *Creditor:* (14583627)<br>O'Conner Commercial Tax Division<br>2200 North Loop West, Suite 200<br>Houston, TX 77081 | **Claim No: 10**<br>*Original Filed Date:* 11/15/2010<br>*Original Entered Date:* 11/16/2010 | *Status:*<br>*Filed by:* CR<br>*Entered by:* Chapman, Anita<br>*Modified:* |
|---|---|---|

| Unknown claimed: $91135.51 | | |
|---|---|---|
| **Total** **claimed: $91135.51** | | |

| *History:* | | |
|---|---|---|
| Details | 10-1 | 11/15/2010 Claim #10 filed by O'Conner Commercial Tax Division, total amount claimed: $91135.51 (Chapman, Anita ) |

| Description: | |
| Remarks: | |

# Claims Register Summary

**Case Name:** Pearland Sunrise Lake Village I, LP
**Case Number:** 10-11926-hcm
**Chapter:** 11
**Date Filed:** 07/09/2010
**Total Number Of Claims:** 10

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | $255336.28 | |
| **Secured** | $39913.95 | |
| **Priority** | $0.00 | |
| **Unknown** | $13894396.14 | |
| **Administrative** | | |
| **Total** | **$14189646.37** | **$0.00** |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/29/2010 16:49:47 | | | |
| **PACER Login:** | fl0085 | **Client Code:** | pearland |
| **Description:** | Claims Register | **Search Criteria:** | 10-11926-hcm Filed or Entered From: 5/1/2010 Filed or Entered To: 11/29/2010 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |